DREW (SMITH v.). See Case No. 13,038.

DREW (UNITED STATES v.). See Case No. 14,993.

DREW (WESTERN DIVISION OF WESTERN N. C. R. CO. v.). See Cases Nos. 17,433 and 17,434.

DREW, The DANIEL. See Case No. 3,565.

---

## Case No. 4,081.

### Ex parte DREWRY.

### In re WALKER.

[2 Hughes, 435.] [1]

District Court, E. D. Virginia. June 14, 1875.

BANKRUPTCY — SALE WITHOUT NOTICE TO LIEN CREDITORS—JURISDICTION TO ADJUDICATE LIENS —PLENARY SUIT.

1. Where real estate incumbered by liens has been sold by order of the bankruptcy court, upon a petition in bankruptcy of which personal notice was not given to lien creditors, and an inquiry and report of liens and their priorities had not been made before the sale, *held*, that the sale was void as to the lien creditors, without personal notice.

2. Where not only a vendor's lien upon real estate which had been purchased by the bankrupt was unsatisfied, but liens were claimed which had attached upon the property before it came to the vendor of the bankrupt, *held*, that the title to the property and the rights of

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

parties cannot be adjudicated in the proceeding in bankruptcy, but resort must be had to a plenary proceeding in equity, either in the district or circuit court, especially if the value in controversy be large enough to give· the right of appeal to the supreme court of the United States.

In bankruptcy. By deed of 22d August, 1866, William C. Claiborne conveyed to Samuel D. Drewry his one-seventh interest in his deceased father's property and family residence on Dan river, opposite the town of Danville, Virginia, called "Mount Blanc," containing about 260 acres. Liens existed on this interest at the time against Claiborne which are immaterial to the question now in controversy. This deed was not recorded in the clerk's office of the county of Pittsylvania until the 30th March, 1868. Drewry's original object in purchasing this interest was to hold it for awhile and resell it to F. G. Claiborne, brother of W. C. Claiborne, who were both brothers-in-law to himself, in order that F. G. Claiborne might own the family residence; which afterwards F. G. Claiborne found he could not afford to do. In September, 1867, James M. Walker, the bankrupt, undertook to purchase the Mount Blanc property, through F. G. Claiborne as to several of the shares. In his negotiations with F. G. Claiborne the latter represented to Walker that he controlled the interest which Drewry had purchased from W. C. Claiborne; and he exhibited to him a note addressed to Walker by Drewry dated September 11th, 1867, in which Drewry stated to Walker that he had "purchased W. C. Claiborne's interest in Mount Blanc for F. G. Claiborne." It resulted from these negotiations that Walker purchased of F. G. Claiborne this and several other interests in Mount Blanc at the rate of $2,000 for each seventh; giving, amongst other things, his note of $2,000 for the purchase-money of W. C. Claiborne's (or Drewry's) interest, and taking a deed from F. G. Claiborne conveying all the interests he purchased, including that of W. C. Claiborne or Drewry, the deed being dated the —— day of September, 1867. A vendor's lien was reserved in this deed for the purchase-money of all the interests that were purchased, the whole agreed price being $7,500, for which it seems notes were given by Walker. During this negotiation no interview whatever occurred between Drewry himself and Walker.

Of the notes given by Walker, the one intended for Drewry was made payable by Walker to J. W. McKinsey for $2,000, at four months, and was inclosed by F. G. Claiborne in a letter, from Danville, to Drewry, in Chesterfield county, with authority to Drewry to put Claiborne's name upon it if he found it expedient to do so, which he did. This note was passed by Drewry to Blanton & Eubank, carpenters, and was by his procurement discounted by W. B. Isaacs & Co., bankers, of Richmond. It was protested for ·non-payment on the 28th January, 1868; suit

was brought upon it by Isaacs & Co.; judgment was recovered against all parties, and execution sued out and twice returned "No effects liable." In fact, however, Drewry took up this note after it had been protested, and the suit was only pro forma in the name of Isaacs & Co., as plaintiffs, who, at Drewry's request, continued to hold the note as ostensible owners. The first return of "No effects" was on the 28th May, 1868. On the 22d day of May, 1868, S. D. Drewry and Alice, his wife, made a deed of the interest in Mount Blanc which Drewry had purchased of W. C. Claiborne, to F. G. Claiborne, duly acknowledged, and Drewry deposited this deed as an escrow with W. B. Isaacs & Co., to be held by them until the payment by Walker of the purchase-money of $2,000 due upon the note. As the note was never paid, and nothing appears to the contrary in the record, it would seem that this deed has never been recorded. Before making this deed of escrow, Drewry had, on the 30th day of March, 1868, duly recorded his deed from W. C. Claiborne of the 22d August, 1866.

J. M. Walker filed his petition in bankruptcy on the 26th day of March, 1868, and was duly adjudged a bankrupt on the 10th day of April, 1868. A petition was in due course, August 5th, 1868, filed in the bankruptcy proceeding, praying that his real estate should be sold free of liens and incumbrances, and the liens thereon transferred to the proceeds of sale. No meeting of creditors was called to show cause against the prayer of the petition, and no notice given them of the petition. In this petition no notice was taken of the title of Drewry to the one-seventh interest in Mount Blanc which had been conveyed to him by W. C. Claiborne by deed dated 22d August, 1866, and recorded 30th March, 1868, which was before this proceeding. No notice of it was given to Drewry by the register or assignees. Drewry, who lived more than a hundred miles off. had no notice at all, except that he was informed by F. G. Claiborne that "Walker's interest in Mount Blanc" was to be sold, in a letter which he received some time before the sale was made. The whole interest of Walker in Mount Blanc embraced by this proceeding for a sale, purported to be four and two-thirds of the seven interests which Walker held in the property, equivalent to two-thirds of the whole. The petition set forth that the interests had been subject to a life estate of the mother of the Claibornes, which had not fallen in until after the petition of Walker in bankruptcy, and had never been reduced to possession by Walker. In pursuance of the assignee's petition for a sale, filed on the 5th August, 1868, and the proceedings had thereon, an order of this court was made on the next day, by its then judge, to wit. on the 6th day of August, 1868, directing a sale as prayed for by the assignee. None of the lien creditors

had notice of or consented to this petition for sale except F. G. Claiborne and D. A. Claiborne, who had given consent by counsel. Under the order of 6th August, 1868, a sale was made of the two-thirds interest in question, on the 31st August, 1868, when F. G. Claiborne was accepted as the highest bidder at the sum of $6,000. It turned out that this purchaser was unable to comply with his contract, and there was a petition filed by the assignees on the 6th October, 1868, setting forth that fact, and praying an order for a resale. There is no paper in the cause showing that there was ever an order of court for a resale. The abstract of proceedings certified by the register makes no mention of such an order, and there was none in fact. And at the subsequent sale, which was made by the assignees on the 27th January, 1869, and reported on the 24th March, 1869, W. W. Keen became the purchaser at the sum of $3,000. This sale was confirmed by the court on the 2d December, 1869, the court in express terms in the order stating that it was confirmed "without prejudice to the interests of parties not before the court." In pursuance of this order, a deed was made to persons whom Keen represented in the purchase. No report of liens existing upon the interests in the property sold was ordered until January 31st, 1870, nor made until several months after that date. and after the sale.

On the 12th September, 1871, Drewry filed his petition here, praying that the sale of his seventh interest in the Mount Blanc property should be set aside, and that the said interest might be restored to him by a proper deed to be executed according to the orders of this court. In due course of proceeding this petition and the answers thereto, and the depositions and proofs taken. having been heard, the then judge of this court, on the 4th day of April, 1872, entered a decree declaring the sale to Keen invalid to the extent of the undivided seventh interest derived by Drewry from W. C. Claiborne; declaring that the said seventh interest was the estate and property of Samuel D. Drewry; setting aside as to that seventh the order confirming it, and the deed made in pursuance of the sale: and directing the assignees to reconvey the seventh interest to Samuel D. Drewry. On the 28th day of May, 1872, the assignees made a reconveyance to Drewry in pursuance of this decree. There was an appeal by W. W. Keen from this decree to the supervisory jurisdiction of the circuit court, which was dismissed without prejudice, for failure of petitioner to prosecute with effect.

A petition of review for errors appearing in the record is now brought in this court, setting forth some of the foregoing facts in this case, claiming that Drewry was bound by F. G. Claiborne's sale and by Claiborne's deed to Walker, and consequently by the sale and resale, to which Claiborne consented. made by the assignees in this cause of Walker's

DREWRY (Case No. 4,031)  [7 Fed. Cas. page 1076]

two-thirds interest in the Mount Blanc property. Upon this petition, after a full hearing, the question now to be decided is upon setting aside and annulling the decree of ·this court, made on the 4th of April, 1872.

HUGHES, District Judge. There are two questions to be decided in this case: (1) What was Drewry's interest, after the bankruptcy of Walker, in the one-seventh of the Mount Blanc property derived by him from W. C. Claiborne? (2) Was that interest affected by the proceeding of the assignees for a sale, and by the sale which they made? 1. I cannot consent to the proposition that Drewry's letter to Walker, of the 11th of September, 1867, saying that he had purchased W. C. Claiborne's seventh of Mount Blanc for F. G. Claiborne, exonerated Walker as purchaser from F. G. Claiborne from the effect of the rule caveat emptor, and relieved him of the duty of looking to the title. Suppose F. G. Claiborne had been a minor or a married woman, would such a letter to Walker have justified him in accepting a deed of the property from F. G. Claiborne? Certainly it was his duty to see that his vendor was competent to make a deed. The universal custom is for the purchaser of real estate to look to the record. That custom and the rule of caveat emptor required Walker to go to the deed-books of the county of Pittsylvania, and to withhold payment of the purchase-money until he had ascertained the competency of F. G. Claiborne to convey W. C. Claiborne's interest in Mount Blanc, by finding W. C. Claiborne's deed to F. G. Claiborne for that interest on record, or something equivalent to a deed. The letter of Drewry contained no such assurance of·title. It was equivalent to declaring to Walker that he had purchased and held the title to the property himself, but did so for F. G. Claiborne, when Claiborne should entitle himself to a conveyance of it, and that Claiborne could in meantime act for him as his agent, to the extent that agents for the sale of real estate may legally act. It was indeed notice to Walker that Drewry owned the property. A brief note, such as that of Drewry to Walker, cannot be held to authorize a third person, mentioned as F. G. Claiborne was, to make a deed·of the property to the purchaser. If so, what would become of all those wise provisions of law requiring formal conveyances of real estate to be made by solemn deed, express personal acknowledgments of them to be made before magistrates or clerks of courts, and privy examinations of married women as to relinquishment of dower, to be solemnly taken. A brief note such as that in question cannot be held to have passed Drewry's title to Claiborne, and can be allowed no other construction than that of making F. G. Claiborne its author's agent to make a contract of sale. F. G. Claiborne's deed to Walker, therefore, was a nullity as to the seventh interest of Drewry, so far as Drewry could be affected by ·it, and it conveyed neither legal nor equitable title to Walker. But this letter or note followed by Drewry's accepting Walker's negotiable note for $2,000 in purchase of Drewry's seventh interest, did bind Drewry to the sale made by Claiborne, as his agent. The deed of W. C. Claiborne to Drewry, duly recorded on the 30th of March, 1868, before the adjudication of Walker in bankruptcy, and before the appointment of Walker's assignee, was notice of Drewry's title in the property to the assignees, and put them to the duty of inquiring after the deed of escrow, which Drewry deposited with Isaacs & Co. on the 22d of May, 1868, shortly after the appointment of the assignees. Walker's interest was only an equitable one, subject to the deed of escrow.

On the whole, the present condition of the title is this, the deed is still an escrow; it will be ineffectual to convey Drewry's interest to the assignees of F. G. Claiborne, who now are the assignees of Walker, until the note for the purchase-money of $2,000, with interest, is paid, and in the meantime the equitable title belongs to the assignees of Walker, the maker of the note. Of course, all this is said without reference to any lien previously existing, which may have followed the interest when it was transferred by W. C. Claiborne to S. D. Drewry. So far as the decree herein of April 4th, 1872, is inconsistent with the condition of the title as thus defined, it is erroneous, and, after proper proceedings, should be corrected, for it was error to decree that this seventh interest in Mount Blanc was absolutely the property of Drewry. The legal title only is in Drewry until the purchase-money due upon it, with interest, is paid. Then, and not before, must the deed go upon record, and then only would the title pass to the assignees of Walker.

2. The equitable title of that seventh interest having been in the assignees of Walker, in August, 1868, subject to the lien of Drewry, under his deed of escrow, the second question is, was the proceeding for the sale of Walker's interest in Mount Blanc, affecting this seventh, such as to bind Drewry? That question does not admit of doubtful answer. The petition for the sale was filed in this court on the 5th of August, 1868, and on the next day, without notice of its filing to any human being in interest, a decree of sale was made. There had been a previous consent by F. G. Claiborne and I. A. Claiborne by counsel to the sale, so far as their own respective interests were concerned, but the decree of sale, if binding anybody at all, binds nobody who was then interested in the Mount Blanc property, except those two men. There is not a particle of proof, nor is there even a pretence, that in giving that consent, F. G. Claiborne acted as agent of Drewry. It is contended, on the contrary, that Isaacs & Co., who still formally held Walker's note, were then agents of Drewry, and it is alleged that they had notice of the petition. If they were

agents of Drewry at all, they were so only as to the note. They were merely holders of paper owned by Drewry, and secured on real estate, the legal title to which was in Drewry, a title which could not be affected except by personal notice to Drewry. But even if Isaacs & Co. were agents of Drewry, both as to the note and as to Drewry's legal title in the seventh interest in Mount Blanc, they had no notice. They not only are not proved to have had notice, and did not have notice of the petition for sale, but it was impossible for them to have had it, living as they did in Richmond, a hundred and fifty miles from Danville, where the petition was filed. Even if they had had notice, the notice of one day would have been insufficient and an absolute mockery. The truth is, that no lien creditor had notice of the petition for this sale. It was filed on one day, and the decree granted on the next. Such a decree, without previous notice to lien creditors and without any time allowed them to have got wind of the proceedings, was absolutely null and void so far as it concerned them. Both sales made under this decree, as well the first sale at which F. G. Claiborne became the purchaser as the second sale under which W. W. Keen became the purchaser, and also the decree in confirmation of the resale, and the deed made in execution of it, were null and void as to the seventh interest of Drewry. I am not called upon to speak of its validity as to any other interest; but I will say that since I have come upon the bench in January, 1874, personal notice to lien creditors and a specific ascertainment of liens and their priorities, have been cardinal prerequisites to sales of real estate by assignees, and it is impossible for me to confirm any sale where they have been wanting. In this case they have been wholly wanting, grossly wanting.

The order of this court made upon the petition of Drewry on the 4th April, 1872, setting aside the sale as to Drewry's interest, must therefore stand. There could be no ground of claim for its validity, except the one now urged in Keen's petition, to wit, that Drewry allowed two years after the cause of action arose to elapse before bringing his petition to set aside the decree of December 2d, 1869. But Drewry's petition was filed on the 18th September, 1871, which was less than two years after the decree of December, 1869, and after the sale of his interest; though more than two years after the decree of sale of August 6th, 1868. There is no limitation of time, however, to a petition in a proceeding in bankruptcy. The 2d section of the bankrupt act [of 1867 (14 Stat. 518)] limits the time for bringing "suits at law or in equity" to two years, but contains no such limitation upon a proceeding in bankruptcy as such. This objection, therefore, does not hold good in the present case.

I have but one other question to consider, and that is, as to the proper manner of trying the rights of all parties contestant, in respect to this seventh interest of Drewry in the Mount Blanc property. Not only is this a question between Drewry's and Walker's assignees, but it is alleged that there are holders of liens upon this seventh interest which accrued before Drewry derived this interest from W. C. Claiborne. These lienors had nothing to do with the bankrupt, or his assignees, or with the proceeding in bankruptcy. Their interests cannot be affected by a summary proceeding here of any sort. They have a right to a full hearing in a plenary proceeding, and must have it if they ask for it. I will set aside so much of the decree of the 4th April, 1872, as adjudges the absolute title and interest in that seventh to Drewry, leaving the deed from the assignees as it is, but this shall be without prejudice to the right of Drewry or the assignees to institute a proper proceeding for the authoritative adjudication of that title. The value at issue is large enough to give the right of appeal from the district or circuit court to the supreme court. If the right be tested here by petition in bankruptcy, there would be only an appeal to the supervisory jurisdiction of the circuit court, and no appeal would be allowable thence to the supreme court. An adjudication of the title in a proceeding in bankruptcy would cut off this right of appeal, and such adjudication must not be made.

In order to preserve this right to the party who may lose the case in the inferior court, the rights of parties must be adjudicated upon a plenary bill in chancery, brought either in the district or circuit court.